UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MING DU, individually and on behalf of
others similarly situated,

                Plaintiff,

        -against-

CGS METAL FABRICATION INC. and
GUO SHENG CHEN a/k/a "SAM"
CHEN,

                Defendants.

-----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
19-CV-1821 (ARR) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       Plaintiff Ming Du initiated this action against Defendants CGS Metal Fabrication

Inc. and Guo Sheng "Sam" Chen ("Defendants") on March 29, 2019. (Complaint

("Compl."), ECF No. 1.) Plaintiff alleges various claims, including violations of the Fair

Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law

("NYLL"), Art. 6 § 190 *et seq.*

       On September 9, 2019, the Clerk of Court certified the default of CGS Metal

Fabrication Inc. for failing to plead or otherwise defend this action pursuant to Rule

55(a) of the Federal Rules of Civil Procedure. (Clerk's Entry of Default, ECF No. 20.) On

April 23, 2021, Magistrate Judge Ramon E. Reyes, Jr. instructed Plaintiff Ming Du to

seek an entry of default against individual Defendant Guo Sheng "Sam" Chen

("Defendant Chen") and to move for a default judgment against both defendants within

fourteen (14) days of an entry of default against Defendant Chen. (*See* April 23, 2021

ECF Order.)

Plaintiff moved for default judgment against Defendants on May 7, 2021. (*See* Mot. for Default J., ECF No. 24.) On May 11, 2021, Plaintiff's Motion for Default Judgment was referred to Magistrate Judge Reyes (May 11, 2021 ECF Order), and on June 4, 2021, the case was reassigned to the undersigned Magistrate Judge (June 4, 2021 ECF Entry). For the reasons set forth below, this Court recommends that Plaintiff's Motion for Default Judgment be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Defendants employed him as a welder and metal fabricator at Defendants' metal fabrication business from March 19, 2018, to March 8, 2019. (Compl., ECF No. 1, ¶ 8.) Plaintiff claims that every week during this time period, he worked fifty-four (54) hours per week. (*Id.* ¶ 33.) Plaintiff alleges that Defendants paid him a flat rate of $140 per day for his work (*id.* ¶ 34), and that these payments were made bi-weekly, in cash (*id.* ¶ 35; Declaration of Ming Du ("Du Decl."), ECF No. 24-4, ¶ 5). Plaintiff contends that Defendants failed to pay him the required overtime compensation of one and one-half times (1.5x) his regular rate of pay for time worked in excess of forty (40) hours a week. (Compl., ECF No. 1, ¶ 36.) Plaintiff further alleges that Defendants failed to provide him with (1) a time of hire notice reflecting true rates and dates of pay; and (2) correct wage statements with every wage payment. (*Id.* ¶¶ 32, 38.) Finally, Plaintiff contends that Defendants "committed the . . . alleged acts knowingly, intentionally and willfully." (*Id.* ¶ 24.)[1]

According to the Complaint, Defendant CGS Metal Fabrication Inc. ("Corporate Defendant") is a domestic business corporation engaged in interstate commerce,

---

[1] The factual record has been further supplemented with declarations by Plaintiff and Plaintiff's counsel. (*See* Du Decl., ECF No. 24-4; Affidavit of Jiajing Fan ("Fan Aff."), ECF No. 24-2.)

organized under the laws of the State of New York. (*Id.* ¶¶ 9–12.) Plaintiff avers that the individual defendant named in the Complaint, Defendant Chen, is the "owner, chief executive officer, and/or managing agent" of Corporate Defendant. (*Id.* ¶ 14.) Plaintiff further alleges that Defendant Chen had the following powers and responsibilities: (1) the power to hire and fire employees; (2) supervision and control of employee work schedules or conditions of employment; (3) determining the rate and method of wages and compensation for employees; and (4) maintaining employee records. (*Id.* ¶ 15.)

Based on the allegations set forth in the Complaint, Plaintiff asserts two claims against Defendants for willfully violating the overtime pay provisions of the FLSA and NYLL, respectively. (Compl., ECF No. 1, ¶¶ 39–50.) Plaintiff also claims that Defendants violated the New York Wage Theft Prevention Act, NYLL §§ 195-1 and 195-3, by failing to provide notice of pay upon hiring and proper wage statements with each paycheck. (*Id.* ¶¶ 51–59.)

Service of the Summons and Complaint upon Defendants was attempted in-person and via mail on three occasions. (*See* ECF No. 10; ECF No. 16; ECF No. 23.) On May 7, 2021, Plaintiff filed the instant Motion for Default Judgment and accompanying documents. (Mot. for Default J., ECF No. 24.) Plaintiff certified service via USPS on the same day (Certificate of Service of Mot. for Default J., ECF No. 25; *see also* Certificate of Service of Request for Certificate of Default, ECF No. 31), and Defendants have failed to appear. Finally, on August 19, 2021, this Court issued notice of a status conference on the default motion and directed that the notice be sent to four addresses associated with Defendants, together with a full copy of the docket sheet. (Aug. 19, 2021 ECF Scheduling Order, ECF No. 26.) On October 5, 2021, Defendants failed to appear for the status conference. (*See* Oct. 5, 2021 ECF Minute Entry and Order.)

**DISCUSSION**

## I.  Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk of Court enters the default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). After the Certificate of Default is entered, the district court may, on a plaintiff's application, enter a default judgment. Fed. R. Civ. P. 55(b). *See also* E.D.N.Y. Local Civ. R. 55.2(b).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011). In addition, the plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2.[2]

---

[2] Having carefully reviewed all of the filings in the case, the Court notes that Plaintiff's motion papers comport with Local Rule 7.1, and that Plaintiff has established procedural compliance with Local Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Request for Certificate of Default as to CGS Metal Fabrication, Inc., ECF No. 18; Request for Certificate of Default as to Guo Sheng Chen, ECF No. 29); (2) filed affidavits demonstrating that Defendants have failed to defend the action, the pleadings were properly served, and the individual against whom the default is sought is "not an infant, in the military, or an incompetent person," in accordance with Local Rule 55.1(b) (*see* Aff. in Supp. of Request for

The court must then determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Id*. However, "a pleading's legal conclusions are not assumed to be true . . . ." *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Rather, "on a motion for a default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief." *Id*.

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-6476 (ARR), 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). The court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL

---

Certificate of Default, ECF No. 18-1; Aff. in Supp. of Request for Certificate of Default, ECF No. 29-1; Aff. of Ming Du, ECF No. 32); and (3) certified the mailing of the motion papers to the last known residence of the individual Defendant and the business addresses of the Corporate Defendant, in accordance with Local Rule 55.2(c). (*See* Certificate of Service, ECF No. 25 (certifying mail service of Plaintiff's Motion to Defendants' home and business addresses); Certificate of Service, ECF No. 31 (certifying mail service of request for certificate of default against Defendant Guo Sheng Chen).)

7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *report and recommendation adopted*, No. 10-CV-4288 (JBW), 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Entry of Default Judgment

A threshold question before reaching liability or damages is whether the Defendants' conduct is sufficient to warrant default judgment being entered. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Basile v. Wiggs*, No. 08-CV-7549 (CS) (GAY), 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for consideration including defaulting party's bad faith, "the possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect" (second alteration in the original) (quoting *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999))).

Because Defendants have not responded to any of the Court's summons, the Court cannot ascertain whether Defendants' default was willful, or what defense they might have raised. However, the Court notes that a "defense is meritorious if it is good at law so as to give the factfinder some determination to make." *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). This requires that there be "evidence of

facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quotation marks omitted). Absent any response from Defendants, despite extensive efforts to serve and notify them of the pending default motion, the Court weighs these factors in favor of default. The final factor is whether in the absence of a default judgment, the non-defaulting party would be prejudiced. This factor strongly weighs in favor of entry of default here because "[d]enying this motion would be prejudicial to Plaintiff[] 'as there are no additional steps available to secure relief in this Court.'" *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

## III. Liability

### A. Liability Under the FLSA

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018).

#### 1. *Employers Subject to the FLSA*

An employer is subject to both the minimum wage and overtime provisions of the FLSA if either: (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). The statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

In his Complaint, Plaintiff alleges that Defendant CGS Metal Fabrication Inc. is an "enterprise engaged in commerce" and thus subject to the FLSA. (Compl., ECF No. 1 ¶ 13.) Plaintiff's assertion that Corporate Defendant is such an enterprise is a legal conclusion and, therefore, is not automatically assumed to be true. In support of this contention, Plaintiff offers little beyond statements that match the language of the statute. (*See, e.g., id.* ¶ 11 ("Upon information and belief, Corporate Defendant at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.").) More specifically, Plaintiff also alleges that "Corporate Defendant has employees who handled and worked on goods moved in commerce such as metal supplies." (*Id.* ¶ 12.)

Although Plaintiff's non-conclusory allegations are thin, "[i]n the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, No. 16-CV-451 (CBA) (CLP), 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated*, No. 16-CV-451 (CBA) (CLP), 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018). Courts have noted that "virtually every enterprise in the nation doing the requisite dollar volume of

business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quoting *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 499 (5th Cir. 1975)). In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Id.* at 530.

Although Plaintiff does not specifically allege that employees handled goods that originated out of state, this Court may safely infer that such goods and materials were used in the operation of the Corporate Defendant's metal fabrication business. Indeed, courts must "draw all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. Courts may infer that an employer is an "enterprise engaged in commerce" within the meaning of the FLSA where, based on the plaintiff's factual allegations accepted as true, "it is simply inconceivable that none of the [goods] used . . . originated outside of New York." *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009). *Cf. Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint that simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State"); *Rodriguez*, 784 F. Supp. 2d at 121 (finding that the plaintiffs' complaint fairly alleged that the defendant company was "an enterprise engaged in commerce" under the FLSA because it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York"). Similarly, given the nature of Corporate Defendant's business, it is reasonable to infer that the raw materials, supplies, and goods necessary to weld and fabricate metal were not exclusively from New York State. Therefore, the Court finds that Plaintiff's allegations are sufficient to establish that Corporate Defendant is subject to the FLSA.

With respect to Defendant Chen, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo*, 2016 WL 8376837, at *5 (citation omitted). Here, Plaintiff alleges that Defendant Chen is the "owner, chief executive officer, and/or managing agent of Defendant Corporation." (Compl., ECF No. 1, ¶ 14.) Taking these allegations as true on default, Defendant Chen is likewise deemed an employer subject to the FLSA. *See, e.g.*, *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

## 2. *Employees Covered by the FLSA*

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff's Complaint alleges that Corporate Defendant employed him as a metal fabricator and welder. (*See* Compl., ECF No. 1 ¶ 8.) "It follows, therefore, that for purposes of this default, he qualifies as an 'employee' under the FLSA." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . 'whether, as a matter of economic reality, the worker [ ] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]'") (alterations in original) (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y.*, Inc., 615 F. Supp. 2d 186, 192–93 (S.D.N.Y. 2009))).

3. *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). Plaintiff has shown that he was an employee of the Defendants.

Accordingly, for the purposes of this default, Plaintiff has offered sufficient factual allegations to establish the threshold requirements for a claim under the FLSA against Defendants.

B. Liability Under the NYLL

To recover under the NYLL, Plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotation marks omitted) (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2); *see also Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407, 408 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013). However, the NYLL's definition of an employer is "broader than that contained in the FLSA." *Ethelberth*, 91 F. Supp. 3d at 360. It includes "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6).

Based on the allegations set forth in the Complaint and discussed above, Plaintiff has sufficiently pled that he was an employee of Defendants and that Defendants were employers within the meaning of Section 190 of the NYLL. Courts in this district have found that a plaintiff who "provides information in the complaint as to where he worked, his position[,] and the dates of his employment" has sufficiently alleged

employee status in the context of a default judgment motion. *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. March 26, 2015).

As noted above, Plaintiff alleges that he was employed as a welder and metal fabricator at Defendants' metal fabrication business from in or around March 2018 to in or around March 2019. (*See* Compl., ECF No. 1, ¶ 8.) Taking his claims as true, Plaintiff has alleged an employee relationship with Defendants subject to the NYLL.

C. Violations of the FLSA and the NYLL

Having found that Plaintiff qualifies for protection under the FLSA as well as New York's labor laws, the Court must now decide whether Plaintiff is entitled to a default judgment on any of his claims for relief. As a threshold matter, the Court notes that Plaintiff filed his claims well within the statutes of limitations under federal and state law. *See* 29 U.S.C. § 255(a); NYLL § 198(3).[3]

1. *Violation of the FLSA's and the NYLL's Overtime Provisions*

Plaintiff alleges that Defendants violated the FLSA and the NYLL by failing to pay him overtime wages for hours worked in excess of 40 hours per week. Accepting Plaintiff's factual allegations as true, this Court recommends finding that Defendants' default amounts to an admission of liability for violating the overtime provisions of the FLSA and the NYLL.

---

[3] The FLSA generally provides for a two-year statute of limitations for enforcement of its provisions, or a three-year statute for "willful" violations. 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). The statute of limitations under the NYLL is six years. NYLL §§ 198(3), 663(3). Plaintiff commenced this action on March 29, 2019, less than two years after he began working for Defendants. (*See* Compl., ECF No. 1, ¶ 8.) Plaintiff's claims are entirely within the limitations periods of both the FLSA and NYLL.

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). In order to establish liability under the FLSA for unpaid overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003)). Employers that violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Similarly, the NYLL establishes certain minimum wage rates and requires that employees be compensated for overtime at "one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Absent statutory exceptions, a flat sum compensation arrangement generally violates the overtime requirements of the FLSA and the NYLL when an employee works in excess of 40 hours per week without additional hourly compensation. *See, e.g.*, *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997(DLI) (CLP), 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017) (finding defendants in default violated the FLSA and the NYLL overtime wage provisions where plaintiffs worked varying amounts in excess of 40 hours for a flat sum per week without additional compensation).

Such is the case before the Court. Plaintiff claims that while working for Defendants, he worked six days per week, for a total of 54 hours per week. (Compl.,

ECF No. 1, ¶ 33.) Plaintiff alleges that Defendants paid him a flat rate of $140 per day for his work, regardless of how many hours he worked over 40 hours. (*Id.* ¶ 34.) Plaintiff further alleges that Defendants "knew or should have known" that they were failing to pay overtime. (*Id.* ¶ 46.) Plaintiff sufficiently alleges that Defendants failed to compensate him with overtime pay for hours worked in excess of 40 per week during the entirety of the period claimed, in violation of the FLSA and the NYLL.

2. *Violation of the NYLL's Notice and Pay Stub Requirements*

Under the NYLL, employers are required to provide their employees "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . ." NYLL § 195-1(a). Additionally, employers must "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." *Id.* § 195-3.

Plaintiff alleges that Defendants failed "to provide written notice" within the meaning of the NYLL § 195-1(a) at the time of hiring and during the remainder of Plaintiff's employment. (Compl., ECF No. 1, ¶¶ 52–54.) Plaintiff similarly alleges that Defendants failed "to provide detailed paystub information to employees every payday" within the meaning of the NYLL § 195-3.[4] (Compl., ECF No. 1, ¶ 57.) Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has sufficiently

---

[4] Plaintiff cites to Section 195-1(d), but this appears to be a mistake. Section 195-1(d) provides that "[a]n employer shall not be penalized for errors or omissions in the non-English portions of any notice provided by the commissioner." NYLL 195-1(d). NYLL § 195-3 is the provision that includes the payday statement requirement.

demonstrated that Defendants violated the NYLL wage notice and wage statement requirements.

## IV. Damages

Having found that Defendants' default constitutes an admission of liability with respect to all of Plaintiff's claims and that entry of default judgment is appropriate, the Court must now determine the appropriate damages. Plaintiff seeks a combination of compensatory damages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorney's fees and costs. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020 WL 5519200, at *3.

### A. Compensatory and Liquidated Damages

#### 1. *Applicable Law*

In determining damages not susceptible to simple mathematical calculations, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The employer bears the burden of establishing that liquidated damages should not be awarded. *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). However, because Defendants have not responded (*see* Sept. 9, 2019 Clerk's Entry of Default, ECF No. 20; Dec. 8, 2021 Clerk's

Entry of Default, ECF No. 30) and have not carried their burden, liquidated damages are appropriate.

An employee is also entitled to recover unpaid overtime wages and liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *report and recommendation adopted*, No. 11-CV-4689 (LLS), 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). A plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). However, a plaintiff is not entitled to double recovery of liquidated damages. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Under the New York Labor Law, willfulness is established where an employer "knowingly, deliberately, or voluntarily underpays employees." *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002). This standard is not appreciably different from the FLSA standard. *Id.* Plaintiff contends that Defendants "committed the . . . alleged acts knowingly, intentionally and willfully." (Compl., ECF No. 1, ¶ 24.) Accordingly, Plaintiff may receive a liquidated damages award under either New York law or the FLSA. Plaintiff does not seek spread-of-hours pay under the NYLL. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

"In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.,* No. 08-CV-6071 (SAS) (ASP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009),

*report and recommendation adopted*, No. 08-CV-6071 (SAS) (ASP), 2009 WL 513371

(S.D.N.Y. Feb. 27, 2009); *see also Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y.

2002); *Zhao v. East Harlem Laundromat, Inc.*, No. 07-CV-201, 2010 WL 4628294, at *6

(S.D.N.Y. Oct. 8, 2010). Accordingly, this Court has calculated the damages owed based

on the representations in Plaintiff's declaration (Du Decl., ECF No. 24-4), as well as in

the motion for default judgment and the records attached (*see generally* Mot. for Default

J., ECF No. 24). *See, e.g., Rodriguez*, 784 F. Supp. 2d at 126 (relying on similar

documents).

>    2. *Analysis*

As discussed above, Plaintiff argues that he is entitled to overtime based on his

work for Defendants from March 19, 2018, to March 8, 2019, for 54 hours per week.

(Compl., ECF No. 1, ¶¶ 26, 33–34.) Crediting his unrebutted claims, the Court finds that

Plaintiff worked for fifty (50) weeks and five (5) days, inclusive of his start date.[5] (*Id.*

¶ 8.) Plaintiff alleges that Defendants paid him a flat rate of $140 per day for his work

and that he worked six days per week. (*Id.* ¶¶ 33–35.) Based on these allegations, the

Court must determine Plaintiff's "regular rate" of pay. Under the applicable

---

[5] Plaintiff alleges that he generally worked Monday through Saturday, but that he worked until March 8, 2019, a Friday. (Compl., ECF No. 1, ¶ 33.) Accordingly, it is appropriate to calculate damages based on five days of work for the final week of his employment, for nine hours each day. Plaintiff is thus entitled to five hours of overtime compensation for the final week of his employment instead of fourteen. *See* 29 U.S.C. § 207(a) (stating that employees must be paid overtime for "any hours worked in excess of forty (40) hours in a given week"); *cf. Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 n.5 (2d Cir. 2013) (finding that failure of plaintiffs to allege hours worked in excess of 40 hours per week required dismissal of plaintiffs' overtime claims under the FLSA and the NYLL); *Rodriguez*, 2011 WL 4962397, at *3 (excluding the final week of plaintiff's employment in calculating the amount of overtime compensation because plaintiff worked thirty-seven (37) hours during his final week of employment). In total, based on his claim to have worked from March 19, 2018 to March 8, 2019, Plaintiff is owed 705 hours of overtime pay (50 x 14 = 700 hours, plus 5 hours for his final week).

regulations,[6] Plaintiff's regular rate of pay is calculated by dividing his weekly pay ($140/day x 6 days) by 54 hours, which equals $15.56 per hour. In turn, Plaintiff's overtime wage is one and one-half times the regular rate, or $23.34 per hour (1.5 x $15.56/hour). *See generally Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 14-CV-5269 (ARR) (JO), 2016 WL 5092588, at *22–24 (E.D.N.Y. Sep. 16, 2016) (Ross, J.) ("When an employee receives a fixed weekly salary, the first step in calculating the rate at which that employee should receive overtime pay is to determine the 'regular rate of pay,' that is, the employee's fixed salary divided by the number of hours worked in a particular week.").

Accepting his claims as true, the Court has determined that Plaintiff's regular rate of pay was $15.56 per hour and that he is entitled to 705 hours of overtime pay, as discussed *supra* note 5, which should have been compensated at the rate of $23.34 per hour.[7] Because Plaintiff has already been paid $15.56 for these hours, the wage

---

[6] The Department of Labor regulations make clear that:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112. In turn, the NYLL instructs that the overtime pay for "miscellaneous industries" should be calculated "in the manner and methods provided in" the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16 ("The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings.").

[7] The Court notes that Plaintiff's calculations appear to rest on the assumption that the flat rate compensation here was intended to pay only for the first 40 hours worked each week. (*See* Damages Calculation, Ex. 9 to Fan Aff., ECF No. 24-11.) However, given that Plaintiff contends that he continuously worked 54 hours a week for an extended period from the outset

deficiency is calculated by multiplying the difference between $23.34 and $15.56, i.e., $7.78, by 705 hours, for a total of $5,484.90 in compensatory damages for Defendants' willful violations of the FLSA and the NYLL. *See, e.g.*, *Jacome v. Optical 49, Inc.*, No. 20-CV-2615 (DG) (PK), 2021 WL 3375134, at *11 (E.D.N.Y. July 9, 2021), *report and recommendation adopted*, No. 20-CV-2615 (DG) (PK), 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021) (using this method to calculate the overtime award where plaintiff was paid a weekly flat rate despite working over 40 hours per week); *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-5303 (VVP), 2018 WL 9945754, at *6 (E.D.N.Y. Oct. 17, 2018) (same). Plaintiff is also entitled to $5,484.90 in liquidated damages under either the FLSA or New York Law.

B. <u>Statutory Damages</u>

Next, Plaintiff claims he is entitled to recover under the statutory damages provisions of the NYLL for Defendants' repeated violations of New York State notice and pay stub requirements. *See generally* NYLL § 198-1-b; NYLL § 198-1-d.[8] Because

---

of his employment, the allegations demonstrate that Plaintiff and Defendants had agreed "at least implicitly," that Plaintiff "would work more than 40 hours per week for [his] weekly salary." *Ayala*, 2016 WL 5092588, at *23; *see also, e.g.*, *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (observing that when the plaintiff's testimony established that when he was first hired, he was told he would work 54 hours per week, and then in fact worked 54 hours each week for the same weekly salary throughout his employment, the court must conclude that "the plaintiff and the defendants had an understanding that the plaintiff's weekly salary was intended to compensate him for 54 hours per week"). Under the applicable regulation, and given the facts alleged, the Court finds that Plaintiff's regular rate of pay should be calculated by dividing his weekly salary by the hours actually worked ($840/54=$15.56), *see supra* note 6.

[8] NYLL § 198-1-b states:

If any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195-1], he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

Plaintiff has alleged that Defendants continually violated these requirements during the course of his almost year-long employment, Plaintiff is entitled to the maximum amount of statutory damages. Both categories of damages are capped at $5,000. Therefore, Plaintiff is entitled to $10,000 in statutory damages.

C. Prejudgment Interest

"It is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages." *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1064 (2d Cir. 1988)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin*, 93 F. Supp. 3d at 48; *see also Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *See Begum,* 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Const., Inc*., No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012), *report and recommendation adopted*, No. 11-CV-5788 (ARR), 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose").

---

In turn, NYLL § 198-1-d, provides:

If any employee is not provided a statement or statements as required by [§ 195-3], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum,* 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.,* No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted,* No. 10-CV-4313 (NG), 2013 WL 2152176 (E.D.N.Y. May 17, 2013). However, plaintiffs may not recover prejudgment interest for wages compensated under the FLSA. *See Santillan v. Henao,* 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). Here, since Plaintiff is entitled to an equivalent award of compensatory overtime wages under either the NYLL or the FLSA, the Court finds Plaintiff is entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin,* 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.,* 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos,* 2018 WL 9945754, at *8 (citing *Fermin,* 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, "from [the midpoint date] . . . through the date judgment is entered." *See Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013).

Here, given that Plaintiff was employed from March 19, 2018, to March 8, 2019, the midpoint of Plaintiff's employment with Defendants was September 10, 2018.

Accordingly, the Court recommends that prejudgment interest be awarded on Plaintiff's unpaid overtime wages of $5,484.90 from September 10, 2018, to the date of this court's judgment at a per diem interest rate of $1.35 ($5,484.90 × 0.09/365).

### D. Post-Judgment Interest

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021). In *Fermin*, the court awarded the plaintiffs post-judgment interest on all sums awarded concerning their FLSA and NYLL wage-and-hours claims. *See Fermin*, 93 F. Supp. 3d at 53. The same approach is appropriate here. Therefore, the Court respectfully recommends that Defendants be ordered to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

### E. Attorney's Fees and Costs

Under both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorney's fees. *See* 29 U.S.C. § 216(b); NYYL § 663(1). In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). The presumptively reasonable fee is "what a reasonable, paying client would be willing to pay, given that such a party wishes to

spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).

Courts can and should exercise broad discretion in determining a reasonable fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); *Arbor Hill*, 522 F.3d at 190 (noting the court's "considerable discretion"). The method for determining reasonable attorney's fees in this circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule*." See Simmons*, 575 F.3d at 174–75 (recounting history of the forum rule); *see also Arbor Hill*, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190. With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). The court must review these time records and the hours an attorney billed in order to determine reasonableness and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours." *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d

Cir. 2009)), *report and recommendation adopted*, No. 07-CV-319 (ARR) (VVP), 2010 WL 2539661 (E.D.N.Y. June 17, 2010). "[A] fee award should be based on scrutiny of the unique circumstances of each case[.]" *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010) (quotation marks omitted). In lieu of an itemized reduction, the Court may also make an across-the-board percentage reduction. *See Guauque Castiblanco*, 2021 WL 4755701, at *10.

In this case, Plaintiff's counsel documents the work of numerous attorneys and staff, who expended 31.1 hours at rates of $150–$300 per hour. (Pl.'s Billing Records, ECF No. 24-12.) Plaintiff's counsel also included an affidavit detailing the experience of the partner and associates of record and documenting the Plaintiff's costs. (*See* Fan Aff., ECF No. 24-2, ¶¶ 24–34.) It appears, however, that the only attorneys who worked on this case were in fact associates. (*See* Mem. in Supp. of Mot. for Default J., ECF No. 24-1, at 13.) In total, Plaintiff's counsel seeks $9,386 in attorney's fees.[9] (Pl.'s Billing Records, ECF No. 24-12.)

    1. *Reasonableness of the Requested Fees*

Plaintiff's counsel requests hourly rates of $300 for Jiajing Fan, Xiaoxi Liu, Diana Seo, and Ge Qu, and $150 for each of the paralegals. (*See* Mem. in Supp. of Mot. for Default J., ECF No. 24-1, at 13.) While Plaintiff provides a detailed affidavit regarding the qualifications of Jian Hang, the firm's partner, no support is offered regarding the

---

[9] Plaintiff's counsel points out that "should Plaintiff receive a default judgment in his favor, many more attorney hours will be spent attempting to enforce the judgment, which we will likely not be compensated for." (*See* Fan Aff., ECF No. 24-2, ¶¶ 24–34.) While Plaintiff's point is well taken, the Court notes that Plaintiff "is not entitled to anticipated fees." *Janus*, 2012 WL 3878113, at *13; *see also Brightstar US, Inc. v. Cellpoint, Inc.*, No. 07-CV-1893, 2010 WL 300367, at*4 (E.D.N.Y. Jan. 20, 2010) (declining to award anticipated fees as speculative); *Kingsvision Pay-Per-View, Ltd. v. Soluna Bar Lounge, Inc.*, No. 06-CV-5066 (ILG) (MDG), 2008 WL 2673340, at *6 (E.D.N.Y. May 27, 2008) ("[C]ourts ordinarily deny requests for attorney['s] fees to be incurred in the future."), *report and recommendation adopted*, No. 06-CV-5066 (ILG) (MDG), 2008 WL 2673338 (E.D.N.Y. June 27, 2008).

reasonableness of the fees requested for the associates who worked on the case. The Court finds that $300 per hour is excessive given the prevailing rates for associates in this district. *See, e.g., Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *9 (E.D.N.Y. Mar. 5, 2021) (observing that in the Eastern District of New York senior associates are usually awarded rates from $200 to $325), *report and recommendation adopted*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *Gunter v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-1804 (WFK) (RER), 2021 WL 966147, at *3 (E.D.N.Y. Feb. 25, 2021) (finding rate of $375 for an attorney with thirteen years of experience reasonable), *report and recommendation adopted*, No. 18-CV-1804 (WFK) (RER), 2021 WL 964921 (E.D.N.Y. Mar. 15, 2021); *Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (explaining that "[c]ourts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, [and] $100 to $200 for junior associates . . . in FLSA cases"), *report and recommendation adopted*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020).

Similarly, the requested rate of $150 for the paralegals' work is higher than typically awarded in this district. *See, e.g., Martinez*, 2020 WL 5260579, at *8 (noting that courts in this district routinely approve hourly rates of $70 to $100 for paralegals in FLSA cases); *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-126, 2019 WL 3937126, at *15 (E.D.N.Y. July 3, 2019) (same); *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-375 (ARR) (RER), 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (explaining that courts in this district have found that $90 to $100 is a reasonable hourly rate for paralegals). Plaintiff's counsel has not shown that the hourly rates requested are reasonable in light of the prevailing rates in this district. Therefore, the Court

recommends that the associates' rate be reduced to $200 per hour and the paralegals' rate be reduced to $100 per hour.[10]

## 2. *Reasonableness of the Hours Billed*

The Court next looks to the reasonableness of the hours billed. Plaintiff's counsel claims 31.1 hours of work expended in connection with the case, including 27.6 hours of associate time and 3.5 hours of paralegal time, and has submitted contemporaneous time records to substantiate the charges. (Pl.'s Billing Records, ECF No. 24-12; *see also* Mem. in Supp. of Mot. for Default J., ECF No. 24-1, at 13.) This amount of time is not unreasonable. *See, e.g., Fermin*, 93 F. Supp. 3d at 52 (accepting 26.4 hours of billed attorney work as reasonable in a default judgment FLSA case); *Lu Nan Fan*, 2019 WL 1549033, at *15 (finding that 25.5 hours was "not unreasonable, particularly at the reduced rate" in similar case); *Wing Chan*, 2020 WL 5027861, at *11 (finding 45.7 hours of work reasonable in default judgment for an FLSA claim).

Accordingly, the Court recommends that Plaintiff be awarded $5,870 in attorney's fees, consisting of $5,520 ($200/hour × 27.6 hours) for the associates' fees and $350 ($100/hour × 3.5 hours) for the paralegal's fees. The Court also recommends an

---

[10] *See Wing Chan v. Xifu Food, Inc.*, No. 18-CV-5445 (ARR) (RML), 2020 WL 5027861, at *11 (E.D.N.Y. Aug. 5, 2020), *report and recommendation adopted*, No. 18-CV-5445 (ARR) (RML), 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020). In *Wing Chan*, the court considered the reasonableness of the attorney's fees requested by associates of the same firm before the Court in this case, the law firm of Hang & Associates, PLLC. *Id.* There, the plaintiffs' counsel provided "no information . . . as to the experience of the two associates who worked on this matter," both of whom have also worked on this case: Jiajing Fan and Xiaoxi Liu. *Id.* Consequently, the court recommended the requested fee be reduced from $350 per hour to $100 per hour, the lowest associate rate in the local range. *Id.; see also Xi Qun Xu v. JNP Bus Serv. Inc.*, No. 16-CV-245 (AMD) (ST), 2018 WL 1525799, at *10 (E.D.N.Y. Feb. 26, 2018) (awarding $100 per hour for associates where no information was provided as to experience level), *report and recommendation adopted in relevant part*, No. 16-CV-245 (AMD) (ST), 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018); *Lu Nan Fan v. Jenny & Richard's Inc.*, 17-CV-6963 (WFK) (RLM), 2019 WL 1549033, at *14 (E.D.N.Y. Feb. 22, 2019) (same), *report and recommendation adopted*, 17-CV-6963 (WFK) (RLM), 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). The Court respectfully recommends a rate higher than the $100 awarded to these attorneys under these precedents in light of the passage of time since these cases, as well as the corresponding additional experience they have gained between then and now.

award of $581 in costs, for a total award for attorney's fees and costs of $6,451 ($5,870 + $581).[11]

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends finding that entry of default is warranted and that under the standard for default judgment, Plaintiff has established that Defendants violated the FLSA and the NYLL.

Accordingly, the Court respectfully recommends that Plaintiff's motion be granted and that default judgment be entered against Defendants CGS Metal Fabrication Inc. and Guo Sheng Chen jointly and severally. With respect to damages, the Court recommends that Plaintiff be awarded a sum of $27,420.80, comprised as follows: $5,484.90 in compensatory damages; $5,484.90 in liquidated damages; $10,000 in statutory damages; and $6,451 in attorney's fees and costs. The Court further recommends that prejudgment interest on Plaintiff's unpaid overtime wages of $5,484.90 be awarded at a per diem interest rate of $1.35 from September 10, 2018, to the date of this Court's judgment, and that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[12]

---

[11] Plaintiff has produced sufficient documentary evidence in the form of affidavits and billing records to show the reasonableness of these costs. (*See* Pl.'s Billing Records, ECF No. 24-12; Fan Aff., ECF No. 24-2, ¶ 33.)

[12] New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and*

This report and recommendation will be filed electronically and a copy sent by mail to Defendants CGS Metal Fabrication Inc. and Guo Sheng Chen. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Allyne R. Ross., at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen **(14)** days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated:  Brooklyn, New York
      January 14, 2022

                *Taryn A. Merkl*
                TARYN A. MERKL
                UNITED STATES MAGISTRATE JUDGE

---

*recommendation adopted*, No. 16-CV-3922 (CBA) (SMG), 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).